**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emissions Technology, Inc., | No. CV10-0393-PHX-NVW |
| Plaintiff, | **ORDER AND OPINION** |
| vs. | **[Re: Motion at Docket 25]** |
| Twin City Fire Insurance Company, a foreign corporation; Hartford Insurance Company, d/b/a The Hartford Company, a foreign corporation, | |
| Defendants. | |

Before the Court is Defendant Twin City Fire Insurance Company's Motion for Partial Summary Judgment. (Doc. 25.) The Court will grant the motion.

### I. Preliminary Matters

The District of Arizona Local Rules require the party moving for summary judgment to submit a separate statement of facts. LRCiv 56.1(a). The Local Rules then require the opposing party to submit a separate statement admitting or denying the moving party's facts, and specifying any additional facts necessary to resolve the motion. *Id.* 56.1(b). The Local Rules do not permit the moving party to submit additional facts in reply. *See Allstate Ins. Co. v. Ford Motor Co.*, No. CV-08-2276-PHX-NVW, 2010 WL 1654145, at *10 (D. Ariz. Apr. 21, 2010). Here, Defendant submitted, along with its reply, a "Supplement to Statement of Material Facts in Support of Defendants [*sic*]

Motion for Partial Summary Judgment." (Doc. 33.) Because the Local Rules do not permit such a "supplement," the Court has not considered it — nor the reply arguments that rely on the supplement — in evaluating this motion.

## II. Summary Judgment Standard

Summary judgment is warranted if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the nonmoving party would bear the burden of persuasion at trial, the moving party may carry its initial burden of production by producing "evidence negating an essential element of the nonmoving party's case," or by showing, "after suitable discovery," that the "nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1105–06 (9th Cir. 2000).

When the moving party has carried its burden, the nonmoving party must respond with "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The nonmoving party "may not rely merely on allegations or denials in its own pleading." *Id*. The nonmoving party's properly presented evidence is presumed to be true and all inferences from the evidence are drawn in the light most favorable to that party. *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1289 (9th Cir. 1987). Allegedly disputed facts must be material — the existence of only "*some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Where the record, taken as a whole, could not lead a rational trier of fact to find for the

1 nonmoving party, there is no genuine issue of material fact for trial.  *Matsushita Elec.*

2 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

3     **III.**    **Facts**

4         **A.**    **The 2006 Policy**

5      Defendant Twin City has issued a number of liability insurance policies to Plaintiff

6 Emissions Technology, Inc. (ETI) over the years.  At issue in this motion is the "2006

7 Policy," which covered ETI from May 10, 2006 to May 10, 2007.

8      The Declarations to the 2006 Policy included an opening paragraph which

9 provided in pertinent part:

> **NOTICE: THE LIABILITY COVERAGE [SPECIFIED HEREIN] . . . PROVIDES CLAIMS MADE COVERAGE.  EXCEPT AS OTHERWISE SPECIFIED HEREIN, COVERAGE APPLIES ONLY TO A CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD . . . .  NOTICE OF A CLAIM MUST BE GIVEN TO THE INSURER AS SOON AS PRACTICABLE, PROVIDED THAT SUCH NOTICE IS GIVEN NOT LATER THAN 60 DAYS AFTER ANY MANAGER BECOMES AWARE THAT SUCH CLAIM HAS BEEN MADE. . . .  PLEASE READ THE POLICY CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.**

16 (Doc. 26-2 at 8 (capitalization and boldface in original).)  Section VIII of the 2006 Policy,

17 titled "Notice of Claim," similarly provided: "As a condition precedent to coverage under

18 this Policy, the Insureds shall give the Insurer written notice of any Claim as soon as

19 practicable, provided that such notice shall be given not later than sixty (60) days after

20 any Manager becomes aware that such Claim has been made."  (Doc. 26-2 at 12–13

21 (boldface removed).)  Section IX, titled "Extended Reporting Period," gave ETI the right

22 (for an additional premium) to elect an extension of time to report claims under the Policy

23 "[i]f any Liability Coverage Part is cancelled or non-renewed for any reason other than

24 non-payment of premium." (Doc. 26-2 at 13.)

25      Endorsement No. 1 to the 2006 Policy expressly deleted "Section VIII. NOTICE

26 OF CLAIM, (A),"and replaced it with the following: "As a condition precedent to

27 coverage under this Policy, the Insureds shall give the Insurer written notice of any Claim

as soon as practicable, but in no event later than sixty (60) days after the termination of the Policy Period, or Extended Reporting Period as described in Section IX." (Docs. 26-2 at 33.) Thus, as governed by the first endorsement, the 2006 Policy no longer contained any deadline based on managerial awareness, but simply set a fixed cutoff date: 60 days after the policy term or extended reporting period expired.

### B. The Pardy Lawsuit

In October 2006 — during the 2006 Policy term — ETI received notice of a lawsuit filed by a former officer and director, Gordon Pardy. The lawsuit alleged claims apparently covered by the 2006 Policy. But ETI did not notify Twin City of Pardy's suit until November 2008 — a delay of more than two years from the time it first received notice, and about eighteen months from the expiration of the 2006 Policy.[1] Twin City denied coverage for the Pardy suit due to the untimely report, among other reasons.

### IV. Analysis

ETI claims that Twin City wrongfully denied coverage, and Twin City now moves for summary judgment on that issue.[2] The following material facts are undisputed:

1. the 2006 Policy covers only claims asserted against ETI while the 2006 Policy remained in effect;

2. the Pardy lawsuit began while the 2006 Policy remained in effect; and

3. ETI did not notify Twin City of the Pardy lawsuit until 2008, well after the 2006 Policy has expired.

---

[1] Twin City argued in its opening brief that a subsequent policy, in force in 2008, would not cover the Pardy lawsuit. ETI's response ignored this argument and therefore implicitly conceded it.

[2] Pardy filed a later, second lawsuit against certain ETI directors, and Twin City also denied coverage for this suit. Twin City's current "Motion for Partial Summary Judgment" is "partial" in that it addresses only whether it justifiably denied coverage for the first Pardy lawsuit.

- 4 -

1  Resolution of Twin City's motion therefore turns on the treatment of untimely reported
2  claims under the 2006 Policy and Arizona insurance law.

3  Twin City argues that the 2006 Policy is a strict "claims made" policy, meaning
4  that, under Arizona law, untimely reported claims are simply not covered, even if the
5  insurer suffered no prejudice from the reporting delay. *Thoracic Cardiovascular Assocs.,*
6  *Ltd. v. St. Paul Fire & Marine Ins. Co.*, 181 Ariz. 449, 891 P.2d 916 (Ct. App. 1994);
7  *Sletten v. St. Paul Fire & Marine Ins. Co.*, 161 Ariz. 595, 780 P.2d 428 (Ct. App. 1989).
8  Because ETI did not timely report the Pardy lawsuit, Twin City contends that it has no
9  obligation to ETI.

10  ETI concedes that if the 2006 Policy is a "claims made" policy as Arizona courts
11  define that term, then Twin City's argument is correct. ETI nonetheless urges this Court
12  to adopt a distinction made in other jurisdictions between "claims made" policies and
13  "claims made and reported" policies. In support, ETI cites *Pension Trust Fund for*
14  *Operating Engineers v. Federal Insurance Co.*, 307 F.3d 944 (9th Cir. 2002), which
15  applied California law and predicted that California courts would enforce the "claims
16  made"/"claims made and reported" distinction, *see id.* at 955–57. This distinction, and its
17  relation to Arizona law, is illustrated by the following table:

| Policy Type (Other Jurisdictions) | Arizona Equivalent | Requirements | Must Insurer Show Prejudice from Untimely Notice of Claim? |
|---|---|---|---|
| "claims made and reported" | "claims made" | (1) Third party must make legal claim against insured during the policy period and (2) insured must report to insurer during the same policy period, or a definite time thereafter. | No. |
| "claims made" | (no Arizona equivalent) | (1) Third party must make legal claim against insured during the policy period and (2) insured must report to insurer before some other less specific deadline (*e.g.*, "as soon as practicable"). | Yes. |

Having recommended this distinction to the Court, ETI contends that the 2006 Policy is only a "claims made" policy (as other jurisdictions would define that term), and not a "claims made and reported" policy. Therefore, ETI argues that Twin City must show prejudice from the delay. Because Twin City has not asserted prejudice, ETI requests the Court to deny summary judgment.

This Court need not decide whether it should adopt other jurisdictions' distinction between "claims made" and "claims made and reported" policies, because the 2006 Policy qualifies as a "claims made and reported" policy in any event — which (under equivalent Arizona law) requires no showing of prejudice. Endorsement No. 1 to the 2006 Policy unambiguously established a fixed deadline by which claims must be reported: "in no event later than sixty (60) days after the termination of the Policy Period." (Doc. 26-2 at 33 (boldface removed).) Such a fixed deadline brings the 2006 Policy into the "claims made" category in Arizona ("claims made and reported" elsewhere), and Twin City has no obligation to show prejudice from ETI's late report.

ETI nonetheless argues that Endorsement No. 1 creates ambiguity about whether the Policy is a "claims made" policy as defined by Arizona law. As originally written,

- 6 -

1  both the opening "notice" paragraph and Section VIII's notice provisions required
2  Emission Technology to notify Twin City of legal claims "as soon as practicable,
3  provided that such notice shall be given not later than sixty (60) days after any manager
4  becomes aware that such claim has been made." (*Id*. at 12–13 (boldface removed); *see*
5  *also id.* at 4, 8.)  These provisions — tying notice to a manager's awareness and not
6  necessarily to the Policy term — would supposedly take the Policy out of the "claims
7  made" category.  But Endorsement No. 1, ETI points out, modified only Section VIII, not
8  the opening paragraph.  Thus, ETI contends, the endorsement creates ambiguity regarding
9  whether the policy is truly of the "claims made" variety.  However, the opening "notice"
10  paragraph — which ETI itself characterizes as a "'preamble'" (Doc. 30 at 7) — does not
11  purport to explain or govern the entire policy.  In fact, it directs the reader to "read the
12  policy carefully and discuss the coverage with your insurance agent or broker." (Doc. 26-
13  2 at 4, 8 (capitalization standardized; boldface removed).)

14  Further, Endorsement No. 1 removes, rather than creates, ambiguity.  At various
15  points, the Policy states that it provides "claims made coverage." (Doc. 26-2 at 4, 8.)
16  "Claims made," as discussed above, is a term of art that Arizona courts apply to insurance
17  policies that mandate reporting within a fixed time period.  Yet the Policy's original
18  notice provision — "not later than sixty (60) days after any manager becomes aware that
19  such claim has been made" — did not set a fixed time period.  Had this language
20  remained in effect, the Court might well have found ambiguity in the 2006 Policy.
21  Endorsement No. 1, however, specifically and explicitly amended the notice requirement
22  to set a fixed time period for reporting claims, thereby  harmonizing it with the rest of the
23  Policy and removing the potential ambiguity.

24  Finally, to the extent ETI argues that the endorsement was somehow a bad-faith
25  "burying" of important terms (*see* Doc. 30 at 5–7), the Court notes that Endorsement No.
26  1 states in boldface, **"THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE**
27  **READ IT CAREFULLY**."  (Doc. 26-2 at 32.)

28

- 7 -

**V.     Order**

For the reasons set out above, it is therefore **ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. 25) is **GRANTED**.

DATED this 4th day of November 2010.

/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

- 8 -